OPINION
Darrell McDargh appeals from his conviction in the Clark County Common Pleas Court of complicity to murder, complicity to aggravated robbery, and tampering with evidence.
McDargh was indicted for these offenses on November 29, 1999. On May 9, 2000, prior to the beginning of a suppression hearing, McDargh orally requested that his court appointed counsel be removed. The trial court overruled the motion, during the suppression hearing, and then overruled the suppression motion after two days of testimony.
On May 22, 2000, McDargh retained private counsel and on October 23, 2000, he entered no contest pleas to the charges in the indictment. After the court made guilt findings, McDargh was sentenced to aggregate prison terms of 20 years to life imprisonment.
McDargh admitted to police that he and Darrell Cochrane planned the robbery of the victim, Antonio Garcia. McDargh told police that Cochrane hit Garcia over the head with a board and then they stole cocaine and money from Garcia. McDargh told police he and Cochrane tied up Garcia and put him in McDargh's car and drove him to a location where he was not discovered for several hours. McDargh admitted to instructing Cochrane to clean up the crime scene to avoid detection of the crime. McDargh denied that he intended to kill Garcia.
In his first assignment, McDargh contends the trial court erred in denying his motion to discharge his court appointed counsel which he made before the suppression hearing.
In his written motion, McDargh contended that his court appointed counsel lied to him several times, that he was transported to a suppression hearing on April 28, 2000 for which he was never made aware, and that he thought his lawyer had him confused with someone else because his lawyer wanted to suppress statements that he allegedly made to his sister when his sister was illegally wired by the government.
On May 9, 2000, the trial court overruled the defendant's motion to discharge his attorney and the court made the following comments:
THE COURT: All right. Thank you, Mr. Schumaker.
 Both counsel agree that they can finish the proceeding on Thursday, May the 11th; and I'll grant that request to reassign till May 11 for the remaining evidence to be presented.
 Do you understand that, Mr. McDargh, your attorney's asking that this case be continued until Thursday on the suppression hearing?
THE DEFENDANT: Yeah.
 THE COURT: In regard to that motion, you mentioned that your attorney lied to you. He didn't lie to you. There was a scheduled hearing, and that was reassigned; and that's why the Court overruled that motion to dismiss your attorney. I find he is a competent attorney, and you're well represented.
 All right. If there's nothing further, we'll adjourn today, reconvene 9 a.m. May 11, 2000, in this court.
The appellant contends the trial court committed prejudicial error in not conducting an "inquiry" into the reasons why the defendant wished to discharge his attorney.
In State v. Deal (1969), 17 Ohio St.2d 17, the Ohio Supreme Court held that it was error for the trial court not to make an inquiry into a complaint lodged by a defendant during his trial that his trial counsel had failed to seasonably file a notice of alibi and subpoena those witnesses in support of the alibi defense. The court held the trial court could overrule the motion and proceed with the trial if the complaint was unsubstantiated or was unreasonable.
In this case, the defendant never informed the trial court in what manner his attorneys "lied" to him. The court noted that the April 28, 2000 hearing had been rescheduled, and the court found that the defendant was being well represented by his court appointed counsel.
During the suppression hearing, Sergeant Barry Eggers of the Springfield Police Department told the prosecutor the defendant's sister, Rebecca McDargh, was a "cooperating witness" who had a conversation with Darrell Cochrane in the Clark County Jail which was recorded by law enforcement officials. Therefore it is clear that the defendant's counsel did not have the defendant "confused" with someone else.
The trial court conducted an adequate Deal inquiry and we see no abuse of discretion in the trial court's refusal to remove the defendant's court appointed counsel. The first assignment of error is overruled.
In his second assignment, McDargh argues that his pleas should be set aside because the trial court failed to determine whether he understood that he was not eligible for probation or for the imposition of community control sanctions by pleading no contest to complicity to murder, aggravated robbery, and tampering with evidence.
The State argues that this assignment should be overruled because the trial court substantially complied with Crim.R. 11(C)(2) and the appellant has not demonstrated he would not have otherwise entered his no contest pleas.
Prior to accepting a guilty or no contest plea, a trial court is to inform the defendant of the matters contained in Crim.R. 11(C)(2). These matters include "[d]etermining that the defendant * * * [understands] that the defendant is not eligible for probation or the imposition of community control sanctions at the sentencing hearing" and "[i]nforming the defendant of and determining that the defendant understands * * * that the court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. (C)(2)(a) and (b).
A trial court need only substantially comply with the nonconstitutional elements of Crim.R. 11(C)(2). State v. Nero (1990), 56 Ohio St.3d 106,108. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Id. A defendant must also demonstrate that he was prejudiced by a trial court's failure to adhere to Crim.R. 11(C)(2). State v. Stewart (1977), 51 Ohio St.2d 86, 93. "The test is whether the plea would have otherwise been made." State v. Nero,supra, at 108. The Court in Nero held that where the totality of the circumstances indicates the defendant knew he was ineligible for probation and was not prejudiced by the trial court's failure to comply with Crim.R. 11(C)(2)(a) substantial compliance with Crim.R. 11 is sufficient. 56 Ohio St.3d at 108-109.
The record demonstrates that the defendant previously served an eighteen month prison term for a felony conviction, and the defendant was entering no contest pleas to very serious charges. The record reflects that neither the defendant nor his counsel mentioned the possibility that the defendant might receive probation or a community control sanction. In fact the only thing the defense counsel requested was that the trial court not impose fines due to the defendant's indigence. After the court imposed the sentences upon the defendant, neither he nor counsel indicated any surprise nor did either suggest that they thought the trial court would impose a community sanction. Under the totality of circumstances in this case, we are satisfied that McDargh understood that he was ineligible for probation despite the trial court's failure to comply with Crim.R. 11(C)(2). We are also satisfied that he would enter his pleas even if the trial court had complied with the criminal rule. The second assignment of error is overruled.
In his third assignment, McDargh argues the trial court failed to comply with Crim.R. 32 by not asking him if he wished to make a statement to the court before the court imposed the sentences upon him.
The State argues that the record reflects that the trial court did comply with Crim.R. 32. The record reflects that the trial court sentenced the defendant before granting the defendant his right of allocution and then asked the defendant if he wished to make a statement.
 [THE COURT]: Did you want to make a statement in regard to disposition, Mr. Rion?
 MR. RION: The only thing I'd like to say is that Darrell's not a man of great means. I'd ask the Court to find him indigent in relation to the fine, and it is my great belief that at no time did Darrell McDargh possess a weapon or any — anything to cause him to the — to the victim and that it was his codefendant, and I'll admit guilt there; but simply I don't think that McDargh — Mr. McDargh caused any harm to Anthony Garcia.
 THE COURT: Does the defendant have a prior criminal record?
MR. RION: He does, Your Honor.
THE COURT: What is that?
 MR. RION: He has a felony conviction for theft in which he served 18 months.
 THE COURT: Mr. McDargh, you have a right to make a statement. Do you want to make a statement at this time?
THE DEFENDANT: No.
* * *
 THE COURT: The Court made findings that the complicity statute applied.
 All right. There appears to be no reason why sentence should not now be imposed. * * *
The trial court then reimposed the sentence it already imposed before giving the defendant his right of allocution.
Crim. R. 32(A) provides in part that "* * * [a]t the time of imposing sentence, the court shall do all of the following:"
 "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."
In State v. Campbell (2000), 90 Ohio St.3d 320, the Ohio Supreme Court held that in a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution, resentencing is required unless the error is invited or harmless. In State v. Myers (February 12, 1999), Greene App. No. 96-CA-38, unreported, this court held the trial failure to comply with Crim.R. 32 is harmless unless the defendant comes forward with information he would have provided the trial court which would have mitigated the punishment imposed by the court.
In this case, the trial court realized it had failed to comply with Crim.R. 32 and gave McDargh and his counsel an opportunity to offer mitigating matter. The defendant declined the opportunity to do so. As such any failure of the trial court to strictly comply with the Rule is harmless. The assignment of error is overruled.
In his fourth assignment, McDargh argues his pleas should be set aside because the trial court failed to advise him pursuant to R.C. 2943.01
that his convictions may have the consequence of deportation, exclusion of admissions to the United States, or denial of naturalization.
R.C. 2943.031(A) requires that, prior to accepting a plea of guilty or no contest to a felony, the trial court must read to him an advisement regarding the potential deportation of the defendant if he is not a citizen of the United States. The statute also sets forth circumstances under which the trial court need not give the advisement. R.C.2943.031(B). The statute also provides a remedy:
 Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty or no contest and enter a plea of not guilty by reason of insanity, if, after the effective date of this section, the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
This Court and other courts of appeals have held that, if a trial court fails to give the advisement regarding deportation, the defendant's remedy is to submit a motion under R.C. 2943.031(D), rather than raise the issue on appeal. State v. Thompson (March 21, 1991), Greene App. No. 90-CA-90, unreported; State v. Scanlon (June 29, 1998), Licking App. No. 95-CA-134, unreported; State v. Reeder (April 14, 1994), Cuyahoga App. No. 65782, unreported; State v. Abuhilwa (March 29, 1995), Summit App. No. 16787, unreported; State v. Esqueda (September 30, 1996), Franklin App. No. 96APA01-118, unreported. If defendant makes the appropriate showing of prejudice, the trial court will then be required to vacate the no contest plea. The defendant's fourth assignment of error is overruled.
Defendant argues in his fifth assignment of error that the trial court erred by not complying with R.C. 2943.032(E), with respect to notification of post-release control prior to accepting his no contest pleas. The State argues that this assignment of error should be overruled because, even when a trial court does not notify a defendant in the manner contemplated by R.C. 2943.032(E), the defendant's remedy is to have the trial court remove post-release control from the defendant's sentence.
R.C. 2943.032(E) states that, prior to accepting a guilty or no contest plea, a trial court shall inform the defendant that "[i]f the [defendant] violates the conditions of a post-release control sanction imposed by the parole board upon the completion of the stated prison term, the parole board may impose upon the [defendant] a residential sanction that includes a new prison term up to nine months." As with the statutory elements of Crim.R. 11(C)(2), a trial court need only substantially comply with R.C. 2943.032. State v. Gales (1999), 131 Ohio App.3d 56,62; State v. Bennett (January 24, 2001), Summit App. No. 20029, unreported.
In this case, the State argues the trial court substantially complied with R.C. 2943.032(E). The State argues that the defendant was probably aware of the existence of post-release control because he had previously served a prison term. In any event, the State argues that McDargh failed to show that he would not have made the pleas if he had known he would be subject to post-release control citing State v. Nero, supra.
We agree with the State that it is highly improbable that McDargh would not have entered his pleas merely because he could have been subjected to an additional new sentence of nine months for violating the terms of post-release control. This assignment is likewise overruled.
In his sixth assignment, McDargh contends the trial court committed prejudicial error by not complying with R.C. 2929.19(B)(3)(f) which became effective one month before his sentencing.
That section provides the following:
 [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
* * *
 (F) Require that the offender not ingest or be injected with a drug of abuse and submit to random drug testing as provided in Section 341.26, 753.33, or 5120.63 of the Revised Code, whichever is applicable to the offender who is serving a prison term, and require that the results of the drug test administered under any of those sections indicate that the offender did not ingest or was not injected with a drug of abuse.
Appellant does not indicate how he was prejudiced by the trial court's failure to comply with the requirements of R.C. 2929.19(B)(3)(f).
R.C. 5120.63(B) requires that the Ohio Department of Rehabilitation and Corrections establish and administer a statewide random drug testing program in state correctional institutions. Nothing in R.C.2929.19(B)(3)(f) requires the trial court to notify the defendant that he may be subjected to random drug testing while the defendant is incarcerated. The appellant's sixth assignment is likewise overruled.
In his seventh assignment he contends the trial court erred in failing to determine pursuant to R.C. 2929.14(K) if he was eligible for shock incarceration under R.C. 5120.031.
R.C. 2929.14(K) sets forth a framework for a judicial recommendation for a defendant being placed in a program of "shock incarceration" under R.C. 5120.031. R.C. 2929.14(K) directs a sentencing court to determine if a defendant is eligible for placement in the program and to approve or disapprove placement. However, the statute goes on to state that "[i]f the court does not make a recommendation under this division with respect to an eligible offender, the [DRC] shall screen the offender and determine if there is an available program of shock incarceration or an intensive program prison for which the offender is suited."
Ohio Adm. Code 5120-11-03 was enacted pursuant to R.C. 5120.031(B)(1), requiring the director of the DRC to enact rules to establish the shock incarceration program. Under Ohio Adm. Code 5120-11-03(B), if the sentencing entry is silent on the issue of placement in a shock incarceration program, "then a prisoner shall be initially screened during reception processing for intensive program eligibility based on the requirements in paragraph (C)(1) or (C)(2) or (C)(3) of this rule." In other words, if the trial court does not make a determination as to eligibility in a shock incarceration program when pronouncing sentence on a defendant, the defendant will be assessed for eligibility by the DRC after arriving at the prison. The failure of the trial court to make such an assessment in defendant's case did not prejudice him and is harmless error. McDargh was ineligible for shock incarceration because he is serving a term for murder and aggravated robbery. See, R.C.5120.032(B)(2)(a). Appellant's seventh assignment of error is overruled.
The judgment of the trial court will be Affirmed.
FAIN, J., and YOUNG, J., concur.